UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
SHOLOM KELLER,

                Plaintiff,

      v.

SESEN BIO, INC., THOMAS R. CANNELL,
JAY S. DUKER, CARRIE L. BOURDOW,
PETER K. HONIG, MICHAEL A.S. JEWETT,
and JASON A. KEYES,

                Defendants.

Case No. 22-cv-10085

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Plaintiff Sholom Keller ("Plaintiff"), by the undersigned attorneys, alleges as follows based (i) upon personal knowledge with respect to Plaintiff's own acts, and (ii) upon information and belief as to all other matters based on the investigation conducted by Plaintiff's attorneys, which included, among other things, a review of relevant U.S. Securities and Exchange Commission ("SEC") filings, and other publicly available information.

## NATURE OF THE ACTION

1. This action is brought by Plaintiff against Sesen Bio, Inc. ("Sesen" or the "Company") and the members of the Company's Board ("Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a) and § 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9(a) ("Rule 14a-9"). Plaintiff's claims arise in connection with the Board's solicitation of public stockholders of Sesen to, *inter alia*, vote on a proposal ("Merger Proposal")

to issue shares of Sesen common stock to stockholders of CARISMA Therapeutics Inc. ("Carisma") in connection with a reverse merger ("Merger") pursuant to which (i) each outstanding share of Carisma stock will be converted into the right to receive 24.5844 shares of Sesen common stock ("Exchange Ratio"), and (ii) Carisma will survive as a wholly-owned subsidiary of Sesen. Based on the Exchange Ratio, and subject to adjustment based on certain other transactions, Carisma stockholders are expected to own approximately 58.3% of the combined entity; and (ii) Sesen stockholders are expected to own approximately 41.7% of the combined entity.

2. On, September 21, 2022, Sesen announced that the Board had approved the Merger with Carisma.

3. On November 21, 2022, Defendants and Carisma authorized the filing of a proxy statement/prospectus (which formed part of a registration statement on Form S-4) with the SEC constituting, *inter alia*, a proxy statement ("Proxy") with respect to Sesen under Section 14(a) of the Exchange Act.

4. As detailed below, the Proxy contains material misrepresentations, and material omissions that render statements therein misleading. These material misrepresentations and omissions render the Proxy false and misleading in violation of the above-referenced Exchange Act provisions and Rule 14a-9.

5. The Proxy advises that a special meeting of Sesen stockholders will be held on a date yet to be announced to vote on the Merger Proposal ("Stockholder Vote").

6. The violations referenced above must be cured in advance of the Stockholder Vote to enable Sesen stockholders to cast informed votes with respect to the Merger Proposal. Therefore, Plaintiff seeks to enjoin the Defendant from taking any further steps to consummate the

Merger and schedule the Stockholder Vote, until such violations are cured. Alternatively, if the Merger is consummated, Plaintiff reserves the right to recover damages suffered by Plaintiff and similarly-situated investors as a result of such violations.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. This Court has personal jurisdiction over each of the Defendants because each defendant has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. *See Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015) (because Exchange Act provides for nationwide service of process, and Defendant resides within the United States, and conducts business within the United States, he should reasonably anticipate being haled into court in the United States, and Court's exercise of personal jurisdiction over Defendant with respect to Plaintiffs' securities fraud claim is proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) ("[w]hen the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

9. Venue is proper under 28 U.S.C. § 1391(b) because Defendants transact business in this District. In particular, the Company's common stock trades under the ticker "SESN" on NASDAQ, which is headquartered in this District, and the false and misleading Proxy was filed

with the SEC, which has a regional office in this District. *See Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (venue appropriate in the Southern District of New York where an act or transaction constituting the alleged violation occurred in the Southern District of New York); *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (venue in tender offer fraud prosecution appropriate in District).

## PARTIES

10. Plaintiff is, and has been at all relevant times, a continuous stockholder of Sesen common stock.

11. Defendant Sesen is a Delaware corporation with its principal executive offices located at 245 First Street, Suite 1800, Cambridge, MA 02142.

12. Defendant Thomas R. Cannell has served as President and CEO of Sesen, and as a member of the Board, at all relevant times.

13. Defendant Jay S. Duker has served as Chairman of the Board at all relevant times.

14. Defendant Carrie L. Bourdow has served as a member of the Board at all relevant times.

15. Defendant Peter K. Honig has served as a member of the Board at all relevant times.

16. Defendant Michael A.S. Jewett has served as a member of the Board at all relevant times.

17. Defendant Jason A. Keyes has served as a member of the Board at all relevant times.

18. Defendants identified in paragraphs 12 to 17 are collectively referred to herein as the "Individual Defendants," and together with Sesen, collectively, the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Sesen's and Carisma's Businesses**

19.     Sesen is a late-stage clinical company focused on targeted fusion protein therapeutics for the treatment of patients with cancer. On July 18, 2022, Sesen announced it was pausing further development of its most advanced product candidate, Vicineum, which was being developed as a treatment for bladder cancer.

20.     Carisma is a biopharmaceutical company that develops platforms for engineering macrophages, which are cells that play a role in immune response and can be used to treat solid tumors.

**Background to the Merger**

21.     On April 22, 2022, the Board authorized Sesen management to evaluate potential strategic alternatives, and on May 2, 2022, the Board authorized the retention of SVB Securities LLC ("SVB") to serve as Sesen's financial advisor in connection with the Board's review of strategic alternatives, including potential transactions with third parties.

22.     After SVB contacted 130 companies to determine their interest in a transaction with Sesen, 42 companies, including Carisma, submitted non-binding indications of interest with respect to a potential strategic transaction with Sesen. Sesen entered into confidentiality agreements with 19 of these companies. The Proxy does not disclose, however, whether any of these confidentiality agreements contained standstill provisions, and if so, under what conditions such provisions would fall away.

23.     Over the course of June and July 2022, ten potential counterparties presented to Sesen management, and thereafter five potential counterparties, including Carisma, presented to the full Board.

24. On July 18, 2022, Sesen announced entry into an agreement with F. Hoffmann-La Roche Ltd and Hoffman-La Roche Inc. ("Roche") under which Roche agreed to purchase certain previously licensed intellectual property from Sesen for up to $70.0 million, including a $40.0 million payment to Sesen upon execution of the agreement and an additional $30.0 million payment to Sesen upon the achievement by Roche of a specified milestone. Holders of Sesen stock as of a date to be agreed upon by Sesena and Carisma prior to the effective time of the Merger will receive one contingent value right ("CVR") for each Sesen share held as of such date, which CVR will entitle holders thereof to receive a *pro rata* portion of the $30.0 million milestone payment from Roche, if the milestone is met.

25. On August 19, 2022, after discussions and due diligence with various potential counterparties, the Board authorized Sesen management to enter into negotiations with Carisma to pursue a reverse merger transaction.

26. On August 23, 2022, Carisma delivered a proposal with a stated value for Sesen of $140.0 million, which represented a $15.0 million premium to Sesen's estimated cash balance at closing. Carisma also agreed to a $125.0 million cash minimum and permitted Sesen to issue a special cash dividend of excess cash and subject to the minimum net cash condition.

27. On August 26, 2022, Sesen and Carisma agreed to a $100.0 million cash minimum and to permit Sesen to issue a special cash dividend of an aggregate amount of up to $25.0 million subject to the $100.0 million cash minimum.

28. On September 20, 2022, SVB issued a fairness opinion opining that the Exchange Ratio agreed upon in connection with the Merger was fair, from a financial point of view, to Sesen. Thereafter, the Board, *inter alia*, unanimously (i) determined that the Merger was in the best interests of Sesen and its stockholders, (ii) approved the Merger, and (iii) resolved to recommend

that Sesen stockholders approve the issuance of shares of Sesen common stock to Carisma stockholders necessary to effectuate the Merger.

29. On September 21, 2022, Sesen and Carisma issued a joint press release announcing the Merger.

**The Proxy Contains Material Misrepresentations and Omissions**

30. Defendants disseminated a false and misleading Proxy to Sesen stockholders that misrepresents or omits material information that is necessary for Sesen stockholders to cast informed votes with respect to the Merger.

*Material Omissions Concerning Confidentiality Agreements Signed With Potential Counterparties*

31. A proxy must disclose material restrictions on bidders such as standstill provisions in confidentiality agreements since it is important for stockholders to know whether certain potential counterparties were precluded from bidding.

32. Here, as noted, the Proxy discloses that Sesen had entered into confidentiality agreements with 19 companies that had submitted indications of interest in a strategic transaction with Sesen. The Proxy fails to disclose, however, whether any of these confidentiality agreements contained standstill provisions, and if so, under what conditions such provisions would fall away. The failure to disclose the existence of such provisions and their terms is a material omission that renders statements in the Proxy misleading because Sesen stockholders could reasonably conclude from the Proxy that the other potential counterparties referenced were free to submit competing proposals after the announcement of the Merger (when, in fact, they were prevented from doing so by standstill provisions).

*<u>Material Omissions Concerning Potential Conflicts of SVB</u>*

33. Because of the central role played by financial advisors in the evaluation and negotiation of a corporation transaction, full disclosure of even potential (not just actual) conflicts of interest of a financial advisor is required. In particular, the financial advisor's opinion of financial fairness for a proposed transaction is one of the most important process-based underpinnings of a board's recommendation of a transaction to its stockholders and, in turn, for the stockholders' decisions on the appropriateness of the transaction. Thus, it is imperative for stockholders to be able to understand what factors might influence the financial advisor's analytical efforts.

34. Here, the Proxy discloses that "[i]n the ordinary course of business, SVB Securities and its affiliates ***currently are providing*** and may in the future provide ***investment banking and commercial banking services*** to Sesen Bio, ***Carisma*** or their respective affiliates and ***would expect to receive customary fees*** for the rendering of such services."

35. SVB is advising Sesen in connection with the proposed Merger with Carisma, including issuing a fairness opinion concluding that the Exchange Ratio is fair to Sesen. Thus, to the extent SVB *concedes* that it is also *currently* providing banking services to *Carisma*, and getting compensated for such services, that presents a material conflict of interest that must be fully and fairly disclosed to Sesen stockholders (who will become minority stockholders in the combined entity as a result of the agreed upon Exchange Ratio). Such disclosure must include the amount of fees that SVB received from Carisma for services provided during the past two years up until the date of the Proxy. The reference to "customary fees" is not sufficient to fulfill this disclosure obligation.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants**
**for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

36. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

37. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any Proxy, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

38. Defendants disseminated the false and misleading Proxy, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39. By virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts from the Proxy necessary to make statements made therein—in light of the circumstances under which they were made—not misleading.

40. Yet, as specified above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants (i) made untrue statements of material fact in the Proxy, and/or (ii) omitted

9

material facts from the Proxy necessary to make statements therein— in light of the circumstances under which they were made—not misleading, in order to induce Sesen stockholders to vote in favor of the Merger Proposal. Defendants were at least negligent in filing the Proxy with these material misrepresentations and omissions.

41. The material misrepresentations and omissions in the Proxy specified above are material insofar as there is a substantial likelihood that a reasonable Sesen stockholder would consider them important in deciding whether to vote in favor of the Merger and related proposals. In addition, a reasonable Sesen stockholder would view disclosures of the omitted facts specified above as significantly altering the "total mix" of information made available to Sesen stockholders.

42. Because of the material misrepresentations and omissions in the Proxy specified above, Plaintiff and other Sesen stockholders are threatened with irreparable harm insofar as Plaintiff and other Sesen stockholders will be deprived of their entitlement to cast fully informed votes with respect to the Merger Proposal if such material misrepresentations and omissions are not corrected before the Stockholder Vote. Therefore, injunctive relief is appropriate.

### COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein

44. The Individual Defendants acted as controlling persons of Sesen within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and/or directors of Sesen, and participation in, and/or awareness of Sesen's operations, and/or intimate knowledge of the contents of the Proxy filed with the SEC, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of

Sesen with respect to the Proxy, including the content and dissemination of the various statements in the Proxy that Plaintiff contends are materially false and misleading, and the omission of material facts specified above.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. Each of the Individual Defendants had direct and supervisory involvement in the negotiation of the Merger, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised same. In particular, the Proxy at issue references the unanimous recommendation of the Board to approve the Merger, and recommend that Sesen stockholders vote for the Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

47. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered in connection with such negotiation, review and approval.

48. By virtue of the foregoing, the Individual Defendants had the ability to exercise control over and did control a person or persons who violated Section 14(a), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict, and can Plaintiff and other Sesen stockholders cast fully informed votes with respect to the Merger.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, employees and all other agents and persons acting in concert with them from proceeding with and holding the Stockholder Vote and consummating the Merger, unless and until Defendants disclose and disseminate to Sesen stockholders the material information specified above that has been omitted from the Proxy, and correct any false and misleading statements in the Proxy;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the transactions contemplated thereby, or granting Plaintiff rescissory damages;

C. Directing Defendants to account to Plaintiff for all damages suffered as a result of their misconduct;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 28, 2022              **WOHL & FRUCHTER LLP**

By:/s *Joshua E. Fruchter*
Joshua E. Fruchter (JF2970)
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Tel: (845) 290-6818
Fax: (718) 504-3773
Email: jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*